UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DORIS GAMBSKY,

       Plaintiff,

v.                                                              Case No. 17-C-322

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## DECISION AND ORDER

Plaintiff Doris Gambsky filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. She contends that the ALJ erred in her decision denying her application. In particular, she asserts that the Administrative Law Judge (ALJ) erred in her assessment of a consultative examiner's medical opinion and in failing to include limitations as to Plaintiff's ability to maintain concentration, persistence, and pace (CPP) in the hypothetical question she posed to the vocational expert (VE) who testified at the hearing. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff filed her application for supplemental security income on August 14, 2012, alleging that she has been disabled since November 15, 2008, as a result of arthritis, cervical fusion, asthma, depression, migraines, and obesity. R. 71, 154. Her application was denied both initially in

November 2012 and on reconsideration in August 2013. R. 70, 94. Plaintiff requested a hearing before an ALJ, and a hearing was scheduled for January 2015. On the day of the scheduled hearing, ALJ Janice M. Bruning granted a postponement to allow Plaintiff time to obtain representation. R. 52, 106, 111. The hearing was rescheduled for May 27, 2015, and Plaintiff ultimately proceeded at that hearing without an attorney or other representative. R. 52, 134. Both Plaintiff and a VE testified at the hearing. R. 50.

At the time of the hearing, Plaintiff was 44 years old, five feet three-and-one-half inches tall, and weighed 210 pounds. R. 52. She lived in Oshkosh, Wisconsin, with her husband, who was disabled, and one of her two sons. R. 53, 65. Plaintiff testified that she has not worked since 2012. R. 54. However, in 2014 she began volunteering at a St. Vincent DePaul store, where she priced clothing and put it on hangers. R. 54–55. She said that she volunteered there four days each week for two-and-a-half hours each day, and she had been doing so for about a year before the hearing. R. 55. Although she had looked for other, paid work, she has struggled to find a position that would allow her the flexibility not only to sit or stand whenever she chose, but also to miss work when she is "having a bad day" due to pain, anxiety, or depression. *Id.* By the time she finishes a two-and-a-half hour shift, Plaintiff testified she is usually in pain. R. 60.

With regard to physical ailments, Plaintiff testified that she experiences pain in her feet, ankles, knees, hips, hands, neck, and back, with the majority of the pain occurring in the back of her hips. R. 57. She testified that she took Tylenol Arthritis for the pain, but it was not as effective as the Lyrica she took when she had insurance. R. 57–58. Plaintiff has diabetes, which she previously treated with an oral medication. R. 55. After undergoing "weight loss" surgery in January 2015, she discontinued the medication and instead focused on diet and exercise. R. 55–56. She uses an

2

inhaler and occasionally uses a nebulizer when a cold or other respiratory ailment exacerbates her asthma. R. 56. She testified that on a daily basis she gets headaches, which she treats using ice packs, Tylenol, and on rare occasions Excedrin or shots in the emergency room. *Id.* Her headaches usually last anywhere from a few hours to a few days, but when she had health insurance she could afford a medication that reduced their frequency to once or twice a week. R. 56–57.

As a result of her physical impairments, Plaintiff testified that, on a good day, she can walk approximately one block without stopping, but on a bad day she said that she can barely walk across a room. R. 60. She testified that she can stand for approximately ten to fifteen minutes without needing to sit, and she can sit for approximately thirty minutes at a time. *Id.* She can lift ten to fifteen pounds, with fifteen pushing her limit. R. 61. Plaintiff testified that she has difficulties climbing stairs, bending, stooping, crouching, crawling, kneeling, and reaching overhead. *Id.* If she is not lifting anything, she has no difficulties reaching in front of herself, but extending her arms completely causes pain. *Id.* Any use of her hands causes pain. *Id.*

As for her mental condition, Plaintiff testified that she has low self-esteem, as well as difficulty concentrating, thinking, and focusing. R. 58. She testified that she was not aware of any memory loss, but stated she experiences crying spells daily. *Id.* Plaintiff testified that she has occasionally thought of harming herself and that she experiences paranoia but not hallucinations. R. 58–59. She further testified that she experiences daily panic attacks that, at their worst, last the entire day. R. 59. When she has a panic attack, she testified, the inside of her body feels like it is quivering, she feels weepy, shaky, and nervous, and she experiences diarrhea and stomach ache, as if she is going to throw up. *Id.* She further testified that the previous fall she met with a doctor on an emergency basis when she was feeling suicidal thoughts associated with her depression. R. 59–60.

3

Finally, Plaintiff answered several questions about her daily activities. R. 61–65. She testified that she struggles to stay asleep and uses a C-PAP machine. R. 61. Despite her pain, she testified that she has no problems bathing or putting on clothes and that she is able to prepare a meal, wash dishes, go to the grocery store, vacuum, dust, mop, and sweep, although she noted that her son and husband do the laundry. R. 62. She testified that she drives almost daily, but she said that she prefers not to because it is a source of anxiety for her. *Id.* At the time of the hearing, her son was a senior in high school, and she testified that she drove him to school before he learned to drive. R. 63. Plaintiff testified that she usually attended her son's choir performances at school, but she also explained that she would intentionally sit in a place—such as an aisle seat—where she could stand without causing a disruption. R. 63–64. Likewise, she attended church periodically, but she usually sat in a location where she could move periodically. R. 64. She testified that she no longer read books, magazines, or newspapers because she struggled to concentrate on them. *Id.* The family kept several pets, and Plaintiff testified that she would sometimes brush their cat and feed and give fresh water to their birds. R. 65.

In a nineteen-page decision dated August 25, 2015, the ALJ determined that Plaintiff is not disabled. R. 26–44. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 26–28. At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since her August 14, 2012 application date. R. 28. At step two, the ALJ concluded that Plaintiff has nine severe impairments: osteoarthritis, bilateral knees; status post-fusion, cervical spine; degenerative disc disease, lumbar spine; asthma; obstructive sleep apnea; headaches; obesity; affective disorder; and anxiety disorder. R. 28.

4

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 30. With regard to her physical impairments, the ALJ considered listings 1.02 (major dysfunction of a joint), 1.04 (spinal disorders), 3.03 (asthma), and 3.10 (sleep-related breathing disorders), as well as Social Security Ruling 02-1p, which requires the ALJ to account for obesity throughout the sequential evaluation process. R. 30, 35. With regard to her mental impairments, the ALJ considered listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) and determined that Plaintiff did not have a sufficient combination of marked impairments and repeated episodes of decompensation to satisfy the "paragraph B" criteria for either listing. R. 36–37. Nor did the evidence support the existence of either listing's "paragraph C" criteria. R. 38.

The ALJ next assessed Plaintiff's Residual Functional Capacity (RFC) and found that she can perform sedentary work as defined in 20 C.F.R. § 416.967(a), subject to a long list of additional limitations. *Id.* Specifically, the ALJ found that the Plaintiff can:

- Occasionally lift a maximum of 10 pounds;
- Frequently lift and/or carry less than 10 pounds;
- Walk and/or stand for about 2 hours total out of an 8-hour workday;
- Sit at least 6 hours out of an 8-hour workday with an option to stand for 1 to 2 minutes after sitting for 30 minutes; and
- Push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations on lifting and/or carrying subject to:

    Postural Limitations of:
    - Never climbing ladders, ropes, or scaffolds;
    - No more than occasional climbing of ramps or stairs; and
    - No more than occasional balancing, twisting, bending, stooping, crouching, kneeling, or crawling;

5

>   And Environmental limitations of:
>   - Avoiding concentrated exposure to lung irritants.
>
> Additionally, the claimant can perform work that requires:
>
> - Understanding, remembering, and carrying out simple routine instructions;
> - End-of-day completion quotas, but no hourly quota;
> - No contact with the public; and
> - No more than occasional contact with co-workers and supervisors.

R. 38–39. In support of the RFC finding, the ALJ conducted a four page discussion of Plaintiff's testimony and medical records, which expanded on a thorough, eight-and-a-half page discussion of her records conducted at step three. R. 30–43.

At step four, the ALJ concluded, based on the testimony of the VE, that Plaintiff did not have any past relevant work experience. R. 43. At step five, the ALJ, again in reliance on the VE's testimony, found that a person with Plaintiff's age, educational background, work experience, and RFC would be able to perform work that is available in significant numbers in the national economy. R. 44. Specifically, the VE testified that a person with Plaintiff's age, education, work experience, and RFC would be capable of performing work as an address clerk, account clerk, or sorter. *Id.* Accordingly, the ALJ found that Plaintiff is not disabled. *Id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to

support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 404 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Plaintiff argues that this court should reverse the decision of the ALJ for two reasons. First, she contends that the ALJ erred in her assessment of the opinion of Dr. Kelly Schinke, who conducted a consultative psychological examination of Plaintiff. Second, Plaintiff contends that the hypothetical question the ALJ posed to the VE failed to adequately account for moderate limitations on her ability to maintain CPP. Neither argument necessitates reversal.

**A. Dr. Schinke's Opinion**

Plaintiff first argues that the ALJ erred by failing to indicate the weight that she gave to Dr. Schinke's opinion in assessing Plaintiff's RFC. The regulations in force at the time of the hearing

required the ALJ to consider all medical opinions available in the case record. 20 C.F.R. § 416.927(b)–(c). An ALJ deciding how much weight to give to an opinion from any particular medical source must consider factors including whether the medical source examined the claimant; the length, nature, and extent of any treatment relationship between the claimant and the source; the degree to which relevant evidence supports the opinion; and whether the medical source is a specialist. *Id.* § 416.927(c)(1)–(6). In general, the ALJ need only "minimally articulate" the reasons for assigning little weight to the opinion of a non-treating medical source. *See Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Even when the SSA orders a consultative examination, "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled will normally "cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.* (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

The main problem with Plaintiff's argument that the ALJ failed to properly assess Dr. Schinke's opinion concerning her RFC is that Dr. Schinke never offered an opinion concerning her RFC. An RFC is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a). Dr. Schinke elaborated at length about what Plaintiff "may have difficulty" doing, but offered no opinion as to what she could or could not do. The "Statement of Work Capacity" contained in Dr. Schinke's report reads:

> Ms. Gambsky may have difficulty understanding, recalling, and carrying out simple instructions. She asked me to repeat a three step command, and reported difficulty with her memory. Ms. Gambsky may have difficulty responding appropriately to her

8

supervisors and co-workers, as she reported that she can be abrasive and her family members concurred. She was polite today. Ms. Gambsky may have a maintaining [sic] concentration and attention. She reported that she is easily distracted. She showed some difficulty being attentive on the mental status exam. Ms. Gambsky may not have adequate psychological resources to deal effectively with work stresses or adapt to changes. She appears to be experiencing symptoms of depression and trauma despite receiving psychotropic medication. Ms. Gambsky does not appear to require the assistance of others to protect her financial interests and manage her daily needs, as she is reporting that she is able to pay bills independently.

R. 367.

As the Commissioner points out, "Dr. Schinke did not offer any specific statements about Plaintiff's mental restrictions or indicate what she could still do despite her limitations." ECF No. 22 at 3. To say that a claimant "may have difficulty doing" something does not tell us "the most" the claimant can still do despite her limitations. This kind of "hedging" by a paid consultant, all too common in social security cases, is of little help to the ALJ, the Commissioner, or a reviewing court because it does not constitute a medical opinion as to the claimant's RFC. Instead of her opinion as to what Plaintiff can do, Dr. Schinke's report consists primarily of a recitation of what Plaintiff told her about how she feels, combined with a further recitation of what she, along with her husband and son, said about what she does. What a person says about how they feel and what they do, however, especially when the person is seeking SSI benefits, doesn't necessarily tell us the most they can do.

By contrast, Dr. Roger Rattan, who reviewed Plaintiff's file at the initial level, concluded that Plaintiff did not even have a severe mental impairment. R. 42 (citing R. 74). And Dr. Kenneth Clark, who reviewed the entire file on August 22, 2013, including Dr. Schinke's report, concluded that despite her limitations, Plaintiff "is able to meet the basic mental demands of unskilled work." R. 42–43 (citing R. 91). The ALJ gave little weight to Dr. Rattan's opinion because "the evidence

received at the hearing level showed the claimant did have a severe mental impairment." R. 42. The ALJ gave "good weight" to Dr. Clark's opinion because it "generally agreed" with what the ALJ took from Dr. Schinke's report. *Id.* In other words, even though Dr. Schinke's report did not specifically say what Plaintiff could and could not do, the ALJ did not simply ignore her report. He summarized her findings, such as they were, and then attempted to accommodate them in the RFC he formulated. R. 42–43.

Thus, in response to the indication in Dr. Schinke's report that Plaintiff had some difficulty paying attention during the mental status examination and asked that a three-step instruction be repeated, the ALJ included a condition in the RFC that limited her to "work that required understanding, remembering, and carrying out simple routine instructions." R. 42. The indication that she had difficulty with situational stressors and tended to overreact was accommodated with a condition that limited her to work that did not have hourly production quotas, but did not preclude end-of-day production quotas. *Id.* To accommodate her dislike of people and desire to avoid people and social situations, the ALJ further limited the RFC to work that required no contact with the public and only occasional contact with co-workers and supervisors. *Id.*

Thus, contrary to Plaintiff's assertion that "the ALJ failed to assess the weight to be afforded the consultative examiner's opinion," ECF No. 11 at 1, the ALJ treated Dr. Schinke's uncertain and indefinite observations as medical opinions and, together with Dr. Clark's clear and unequivocal opinion, incorporated them into the RFC she formulated. This is precisely the kind of analysis an ALJ is required to undertake in assessing a claimant's RFC. As the SSA's regulations explain, it uses medical sources to provide evidence, including opinions, on the nature and severity of the claimant's impairments. 20 C.F.R. § 416.927(d)(2). But the assessment of a claimant's RFC is the

responsibility of the ALJ, not the doctors, once a case proceeds to that level: "Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, *your residual functional capacity* (see §§ 416.945 and 416.946), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* (emphasis added); *see also* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.").

In this case, the ALJ carefully considered and weighed the opinions and other statements of the medical sources, including the medical consultative examiner, in formulating an RFC for Plaintiff. No error has been shown. Plaintiff's argument on this issue is without merit.

**B. Limitations on CPP in the Hypothetical to the VE**

Plaintiff next claims that the ALJ erred in failing to fully inform the VE of her mental limitations and restrictions. In particular, Plaintiff notes that the ALJ found at step three of the sequential evaluation process that Plaintiff had moderate difficulties with regard to maintaining CPP and failed to include this finding in the hypothetical. Citing *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), and *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), Plaintiff contends that by failing to inform the VE of these CPP findings, the ALJ's hypothetical deviated from Seventh Circuit precedent.

It is well-established in this circuit that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga*, 794 F.3d at 813 (quoting *Yurt*, 758 F.3d at 857). In particular, the Seventh Circuit has found

11

fault when the ALJ has translated a finding of moderate limitations in CPP into an RFC limiting the claimant to simple, routine, and repetitive tasks. *See O'Connor–Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (rejecting argument that "an ALJ may account generally for moderate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled work"). But where a medical source, whose opinion the ALJ reasonably accords great weight, translates the medical source's own finding that the claimant may have moderate difficulties in CPP into an ultimate conclusion that the claimant can nevertheless perform simple, routine, and repetitive work, the ALJ does not err. Thus, in *Johansen v. Barnhart*, the court held that the ALJ did not err in finding that despite the plaintiff's moderate limitations in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, he could still perform repetitive, low-stress work:

> The ALJ did not err in relying on Dr. Matkom's assessment of Johansen's mental RFC. Both Dr. Matkom and Dr. Berney found that Johansen was essentially "moderately limited" in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Dr. Matkom, however, went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work. Dr. Berney, on the other hand, did not make an RFC assessment (nor did state-agency physician Ingison). Thus, because Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to Goldsmith.

314 F.3d 283, 288–89 (7th Cir. 2002); *see also Capman v. Colvin*, 617 F. App'x 575, 578–79 (7th Cir. 2015) (holding ALJ did not err in limiting plaintiff "to simple, routine tasks that did not require working with the public or in close proximity or cooperation with others," notwithstanding finding moderate limitations in CPP).

Similarly in this case, despite Dr. Clark's finding that Plaintiff had moderate limitations in CPP, he, Dr. Clark, concluded that she could nevertheless "meet the basic mental demands of unskilled work." R. 91. Nothing in Dr. Schinke's report states otherwise. Faced with this evidence, the ALJ reasonably concluded that Plaintiff had an RFC that left her capable of performing the limited range of sedentary work that required "[u]nderstanding, remembering, and carrying out simple routine instructions; [e]nd-of-day completion quotas, but no hourly quota; [n]o contact with the public; and [n]o more than occasional contact with co-workers and supervisors." R. 39. Indeed, the RFC formulated by the ALJ is even more limited than Dr. Clark's opinion required.

Notwithstanding this more limited RFC, Plaintiff asserts the ALJ was required to describe how the evidence supported each specific limitation tailored to her mental impairments in a function-by-function assessment in accordance with SSR 96-8p. ECF No. 11 at 12. "Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted). Here, the ALJ thoroughly discussed Plaintiff's testimony, the medical evidence pertaining to her impairments, and the medical source opinions. The ALJ's assessment complied with SSR 96-8p.

Plaintiff complains that the ALJ allowed an "end-of-day" quota without tying it to the medical evidence. But the ALJ did tie this limitation to the evidence. As he explained in his decision, the requirement of no hourly production quotas was intended to accommodate what he found to be Plaintiff's difficulty with situational stressors and tendency to overreact. R. 42. The allowance of end-of-day quotas simply means there was no requirement that she not be expected to

13

accomplish anything by the end of the day. The fact that no medical source specifically recommended such a limitation does not make it unreasonable. Plaintiff was not harmed by the ALJ's incorporating limitations more stringent than either Dr. Clark or Dr. Schinke said were strictly necessary.

Plaintiff cites *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), and *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), as support for her contention that the ALJ in this case erred in her formulation of the RFC. In *Varga*, the ALJ found that the plaintiff had moderate limitations in CPP and in various functional areas within that broader category, but then adopted an RFC that only limited her to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements." 794 F.3d at 811–13. Similarly in *Yurt*, the ALJ found that the claimant had moderate difficulties in CPP, but then accommodated that difficulty by simply limiting him to unskilled work. 758 F.3d at 858. In both cases, the Commissioner's decisions were reversed.

Plaintiff seems to read *Varga*, and *Yurt* as well, to say that an RFC limiting a claimant to simple, routine, repetitive work is never appropriate when moderate difficulties in CPP are found. But this is not what these cases say. In *Yurt*, the court declined to adopt the blanket rule, based on the instructions in the SSA's Mental RFC Assessment (MRFCA) form, that the boxes checked by the reviewing psychologist in the worksheet section of the form do not constitute the RFC assessment, which the Third Circuit had applied in *Smith v. Commissioner of Social Security*, 631 F.3d 632, 637 (3d Cir. 2010). 758 F.3d at 858. But *Yurt* did not say that the worksheet observations always control over the doctor's narrative RFC assessment.

And *Varga* explicitly recognized that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those

14

worksheet observations." 794 F.3d at 816 (citing *Johansen*, 314 F.3d at 286). The problem in *Varga* was that the doctor's narrative RFC was missing. Under those circumstances, the court held that it was error not to rely on the worksheet observations. *Id.* But where the examiner's narrative is included and is not inconsistent with the worksheet findings, the ALJ may reasonably rely on it. *See also Capman*, 617 F. App'x at 579 ("So the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet.").

The recent case of *Lanigan v. Berryhill* does not change the law on this issue. 865 F.3d 558 (7th Cir. 2017). *Lanigan* recounted that the court had said that "an ALJ must explicitly address those [CPP] limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying mental conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology." *Id.* at 565 (citing *O'Connor–Spinner*, 627 F.3d at 619–20). The court found that none of the three exceptions applied in that case. *Id.* Here, by contrast and as explained above, the only medical source that offered an opinion on the topic translated Plaintiff's limitation in CPP into a mental RFC that was even less generous than the RFC the ALJ adopted.

As noted above, a claimant's RFC is "the most [the claimant] *can* still do despite [the claimant's] limitations," 20 C.F.R. § 404.1545(a)(1) (emphasis added), not what she can do with ease or without moderate difficulty. This is particularly important to note when one considers what the term "moderate" is intended to mean in this context. The recent rule revisions by the SSA clarify that a "moderate" limitation means that a claimant's "functioning in this area independently,

15

appropriately, effectively, and on a sustained basis is fair." SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017). Although the revised regulations became effective after the hearing was held in this case, the definitions "are consistent with how [SSA's] adjudicators have understood and used those words in [SSA's] program since [SSA] first introduced the rating scale in 1985." 81 Fed. Reg. 66147. As a result, the definitions set forth in the new rules "do not represent a departure from prior policy." *Id.*; *see also Capman*, 617 F. App'x at 579 ("A moderate limitation is not a complete impairment." (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007))). Thus, moderate difficulty does not mean that the claimant is unable to perform the activity or task.

To repeat, the ALJ carefully considered and weighed the opinions and other statements of the medical sources, including the medical consultative examiner, in formulating an RFC for Plaintiff. Notwithstanding his finding that Plaintiff had moderate difficulties in CPP, a finding based on the opinions of Dr. Schinke and Dr. Clark, the ALJ found that Plaintiff could perform work that fell within the detailed RFC set forth in his decision (R. 39), an RFC even more limited than Dr. Clark thought necessary. Plaintiff's insistence that this court find that the ALJ's RFC fails to capture the limitations of a person with moderate difficulties in CPP is an invitation for the court to both "play doctor" and usurp the function of the ALJ. Neither is allowed under the law governing judicial review of the Commissioner's decisions. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). For all of these reasons, the ALJ's assessment of Plaintiff's RFC was not the result of error and is supported by substantial evidence.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** this 20th day of March, 2018.

                                                s/ William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court